# Routen *et al. v.* Bostwick *et al.*

## *A Settlement of Partnership Accounts.*

1. *The entries in the books of a partnership are presumed to be correct.* The books of a commercial partnership, and the entries therein, when all the members have free access to them, are evidence for and against the several partners in settling the partnership accounts. The entries are presumed to be correct until the contrary is shown.

2. *Books of partnership are evidence for and against the partners.*—In a suit for the settlement of partnership accounts, the register on a reference, should receive such books as evidence for and against all the partners.

3. *Books produced at the instance of complainant, are evidence against him.*—When a bill requires a defendant to produce books and papers in his possession, for the purposes of an account, on production, they become evidence against the complainant.

APPEAL from the Chancery Court of Butler.
Heard before the Hon. ADAM C. FELDER.
The facts are stated in the opinion.

GAMBLE & POWELL, and WATTS & WATTS, for appellants.

HERBERT & BUELL, for appellees.

BRICKELL, C. J.—The main question presented by the record, is one of fact, to ascertain from the evidence, whether any indebtedness, and if any, the amount thereof, is owing by the testator of the appellants to the appellees. The testator, Monroe P. Watts, the appellee John H. Bostwick, and James A. Branch, the intestate of the appellee Berry, were for a few months, from the fall of 1865, to the 17th day of March, 1866, partners doing a general commission business in the city of Mobile. The partnership was dissolved, and Watts was left in possession of the partnership books, and assets, having exclusive authority to settle its affairs. By the terms of the partnership, he was entitled to one-half of the

net profits, and Branch and Bostwick to one-fourth each. The partnership debts were paid, and the partnership assets reduced to money by Watts, after the dissolution. The bill is filed for a settlement of the partnership accounts, and the ascertainment of the balance due from Watts to Branch and Bostwick, which is averred to be two thousand and two 87-100 dollars. The total net profits, it is averred, up to the time of the death of Watts, was nine thousand eight hundred and sixty 30-100 dollars, subject to a deduction in favor of Watts, of two thousand nine hundred and twenty-seven 28-100 dollars, for advances to the partnership made by him. The answer denies this averment, avers there were none, or very inconsiderable profits made by the partnership, and exhibits an account of the debits and credits, against and for Watts as shown by the partnership books, which show a balance against him of less than thirty dollars. The cause was referred to the register to take and state an account between the parties. Finding it difficult to state the account, in accordance with the directions of the chancellor, he reported there was a balance due from Watts, to the appellees, on the second day of June, 1868, of two thousand and two 87-100 dollars, which with interest to the making of the report, amounted to two thousand nine hundred and twenty-four 19-100 dollars. The register founded his conclusions on the evidence of one Underhill exclusively, regarding it as the most satisfactory, and disregarded the partnership books, because as he supposed they were unintelligible. The report was confirmed by the chancellor.

The book of a commercial partnership, and the entries therein, when all the members have free access to them, are evidence for and against the several partners in settling the partnership accounts. The entries are presumed correct until the contrary is shown.—*Desha & Sheppard v. Smith*, 20 Ala. 747. It is shown very satisfactorily, that after the dissolution, each partner had free access to the partnership books, though they were in the possession of Watts. The entries on these books were made generally by Bostwick, who states in his deposition, that after the dissolution, he went to Watts' office every day or two, "to write up the unfinished business." These books should have been received by the register, as evidence for and against all the partners. Moreover, it is averred in the bill, these books are in possession of the defendants, and they are required to produce them. When a bill requires a defendant to produce books and papers for the purposes of an account, on production, they become

evidence against the complainant.—*Powell v. Powell*, 7 Ala. 582; *May v. Barnard*, 20 Ala. 200; *Turleton v. Goldthwaite*, 23 Ala. 346.   The register was in error, in not taking the partnership books as *prima facie* correct.   The separate books of Watts, were not proper evidence against the appellees, unless it had been shown they had assented to the correctness of the entries therein; or they had introduced them in evidence, when they must have been taken as *prima facie* correct, not only so far as they charged, but also, so far as they discharged Watts, or charged the appellees.

As we understand the evidence, if the partnership accounts had been stated from the partnership books, no balance, or if any, a very inconsiderable balance, would have been found due from Watts to the appellees.   The evidence of Underhill, is the only evidence on which it is claimed that such balance exists.   He was twice examined—once by deposition, and then orally before the register, the examination being reduced to writing, and accompanying the register's report.   In his deposition he says: "I was more than once desired by M. P. Watts to make up a statement of the amount he owed on settlement to Bostwick, and Branch's estate.   I did so several times.   I forgot the balance I made out to Branch's credit.   Bostwick's balance was I think between $2,000 and $3,000, and I have always said so.   The statements which I made up on at least two several occasions were always placed by Mr. Watts in his pocket-book."   We can not understand this statement as meaning more or less than that the witness ascertained from the books, and other sources of information, whatever they may have been, which were accessible to him, the balance due to Branch, and the balance due to Bostwick separately.   There was no ascertainment, and no effort to ascertain any balance as due them jointly.   It is too uncertain, and too indefinite to sustain any claim on the part of Branch.— *Watson v. Byers*, 6 Ala. 393; *Baxley v. Gayle*, 19 Ala. 151.   As to Bostwick, it may satisfy the mind, that there was a balance due him as ascertained by the witness, of not less than two thousand dollars.   In his examination before the register, the witness says, testifying in reference to the same matter: "While I was in his employment in April or May, 1868, I made out the account three times I think, and gave it to Mr. Watts.   The balance due Branch & Bostwick was between twenty-one and twenty-two hundred dollars, according to the best of my recollection, and I made this account in consequence of Mr. Watts telling me to take the books, and make out such account as

I thought correct, and in making such account I left out such items as I thought ought not to be included, and the item which Mr. Watts acknowledged was incorrect of $62 20-100." The inconsistency in these statements is apparent, and is unexplained. If the last is to be accepted, the balance ascertained was due to Branch and Bostwick jointly,— there was not a separate, different balance due each. The fact is, that after these statements were made, there were entries made on the books, which changed entirely the state of accounts, and which, if correct, show the balance due from Watts is inconsiderable, and of the balance he would be entitled to one-half leaving due to Bostwick and Branch less than twenty dollars. . The books and the entries thereon, must be taken as *prima facie* correct. Especially must they be so taken in this case, as it is shown the only entries now in dispute were called to the attention of Bostwick, at or about the time they were made, and he objected to but one, which Watts agreed should be corrected. Another fact not without significance, is, that at first the amount of net profits, was by the appellees stated at the precise sum of three thousand forty-two dollars, of which one-half amounting to fifteen hundred and twenty-one dollars, was claimed. This balance is said to have been ascertained from the books, which were produced before the register; yet no effort was made on the reference to the register, to point out the mode in which it was ascertained. The bill avers the balance due the appellees jointly, of which each is entitled to one-half, was two thousand and two 87-100 dollars—that the net profits were nine thousand eight hundred and sixty 30-100 dollars, subject to a deduction for advances made by Watts, of two thousand nine hundred and twenty-seven 38-100 dollars. If the appellees are not proceeding on mere conjecture, they must have had some *data,* from which they were enabled to aver with such precision the amount of the net profits, the deduction to be made from them, leaving the balance due from Watts to them the matter of arithmetical calculation. If they had such *data,* no evidence thereof has been given ; and the right of recovery has been rested alone on the evidence of Underhill. It is not insisted they had not the means of showing on the hearing, or on the references before the register, how and from what sources these precise sums were ascertained. The presumption can not be indulged, that the averments proceeded from mere conjecture ; and if that presumption was indulged, the appellees. would stand in a scarcely less favorable attitude, than they must stand now, that of with--

holding evidence, they could and should have introduced. The burden of proof rests on the appellees, they must show by evidence generating a clear, rational belief, that on a settlement of partnership accounts, the testator of appellant is indebted to them. The evidence now found in the record does not support the conclusions of the register, and the exceptions to his report should have been sustained. The partnership books should have been accepted as *prima facie* correct. The duty of pointing out errors in them, rested on the appellees. If such errors are shown, they should be corrected in stating the accounts.

The decree must be reversed and the cause remanded.